**Ozzie HACKETT, Appellant,**

v.

**McGUIRE BROTHERS, INC., and Local Union No. 187, Commission Salesmen, Drivers and Helpers of the International Brotherhood of Teamsters.**

**No. 71-1064.**

United States Court of Appeals, Third Circuit.

Argued June 3, 1971.

Decided July 8, 1971.

---

Harold I. Goodman, Harvey N. Schmidt, Philadelphia, Pa., for appellant.

Philip B. Sklover, Stanley P. Hebert, Gen. Counsel, John de J. Pemberton, Jr., Deputy Gen. Counsel, Julia P. Cooper, Chief, Appellate Section, Washington, D. C., amici curiae.

Edward Davis, Philadelphia, Pa., for appellee Union.

John H. Leddy, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Jacob P. Hart, Philadelphia, Pa., on the brief for appellee McGuire Bros.

Before McLAUGHLIN, ALDISERT and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Ozzie Hackett, the plaintiff-appellant, appeals from an order of the district court which granted a motion by defendants to dismiss his complaint. The defendant-appellees are McGuire Brothers, Inc. (McGuire), a former employer of Hackett, and Local Union No. 187, Commission Salesmen, Drivers and Helpers of the International Brotherhood of Teamsters (Local 187), a labor organization with which McGuire has a

collective bargaining agreement. The motion which was granted was one of several made pursuant to Rule 12, Fed. R.Civ.P., but since, as will appear hereinafter, matters outside the pleadings were considered by the court, the order will be treated as one granting both defendants summary judgment pursuant to Rule 56, Fed.R.Civ.P. Except for the one factual circumstance with respect to which the district court went outside the amended complaint, the matter is before us on that complaint, and its allegations must be taken as true.

Hackett, a Negro, claims federal jurisdiction under 28 U.S.C. §§ 1331 and 1343(4). He charges that he has been discriminated against with respect to his employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and of the provisions of the Civil Rights Act of 1866 now found in 42 U.S.C. § 1981. He alleges that the amount in controversy exceeds $10,000.

In 1937 Hackett was hired by Eddowes-Star Laundry as a driver's helper. Later he was promoted to driver. From the time he was hired by Eddowes-Star Laundry, which operated in Philadelphia, until May of 1953, he was the only Negro employed as a driver's helper or driver. In May of 1953 McGuire purchased all of the assets of Eddowes-Star Laundry and created a wholly owned subsidiary to carry on its business called Star Industrial Laundry, Inc. (McGuire-Star). Hackett was retained as a driver for McGuire-Star until June 23, 1967, when he was discharged. During this time he was the only Negro employed by McGuire-Star as a driver. After May of 1953 McGuire, which was engaged in the laundry business elsewhere than at the McGuire-Star location, maintained separate lines of seniority and separate vacation schedules for certain employees, including Hackett, formerly employed by Eddowes-Star Laundry. These practices were estab-

lished and maintained because of Hackett's race and adversely affected the conditions of his employment. During the course of his employment with McGuire-Star he was subjected to harassment and intimidation, and conditions of his employment were otherwise adversely affected by McGuire-Star solely because of his race. On June 23, 1967, he was discharged, solely because of his race.

Hackett alleges that he is a member in good standing of Local 187 and has been such for approximately twenty-five years. He is entitled to seniority in his employment and in the Union. At the time McGuire acquired the business of Eddowes-Star Laundry, Local 187 acquiesced in the separation of seniority lines and vacation schedules established by McGuire, thereby depriving Hackett of employment opportunities and adversely affecting his status as an employee solely because of his race. When he was subject to harassment and intimidation in his employment, Local 187 made no attempt to protect him, thereby breaching its duty to protect the rights of all the members regardless of race. When he was discharged because of his race, Local 187 acquiesced in his discharge and refused to secure either reinstatement or other employment or to inform him of a subsequent job opening, solely on grounds of his race.

The complaint sets forth class action allegations both against McGuire and against Local 187. It seeks (1) reinstatement to his former position at McGuire-Star with back pay, seniority and other rights, (2) money damages against both defendants, and (3) injunctive relief from further harassment and intimidation of and discrimination against Hackett and the class he represents.

The complaint alleges that Hackett filed a timely charge with the Equal Employment Opportunity Commission,[1]

---

1. A challenge to the timeliness of Hackett's EEOC charge was made by McGuire in its Rule 12 motion, but was not passed upon by the district court. There is an inconsistency in the complaint between the allegation of timeliness and the

42 U.S.C. § 2000e–5(d), that the Commission deferred to the Pennsylvania Human Rights Commission, that thereafter the Equal Employment Opportunity Commission assumed jurisdiction and found no reasonable cause to believe a violation of the Act had occurred, and that on October 9, 1969, the Commission served notice on plaintiff of his right to start suit. 42 U.S.C. § 2000e–5(e).

Both defendants made motions under Rule 12, Fed.R.Civ.P., addressed to the sufficiency of the foregoing allegations. None of the asserted defects in the complaint were considered by the district court. At the hearing on the defendant's motions it was called to the court's attention, informally, that on November 1, 1969, Hackett applied for and was granted shortly thereafter a deferred pension under the terms of an industry wide pension trust set forth in an agreement between the laundries in the Philadelphia area and Local 187. Thereafter the fact of Hackett's application for pension benefits, the approval of that pension on November 18, 1969, and the text of the pension plan and trust agreement were established by the affidavit of a Union officer. The several briefs acknowledge that for some time after his discharge from McGuire-Star Hackett worked at another laundry which apparently went bankrupt. Thus Hackett apparently was employed in the laundry trade during the time he was pursuing his Title VII remedy before the Commission, and applied for a pension between the time the Commission notified him of its finding of no reasonable cause and the time he commenced suit.

The district court dismissed Hackett's individual suit on the ground that as a pensioner he was not an employee within the meaning of Title VII, and hence he lacked standing to sue. It dismissed the suit as a class action on the ground that Hackett was not, when he filed the suit, a member of the class he purported to represent. Rule 23(a), Fed.R.Civ.P. We reverse.

In reaching the conclusion that Hackett, as a pensioner, lacked standing the district court relied upon the definition of "employee" in Section 701(f) of Title VII, 42 U.S.C. § 2000e(f), as "an individual employed by an employer." But that definition, in a general section of the Title devoted to definitions, does not speak to the issue of standing to invoke the remedies of the Act. The remedies section is § 706, 42 U.S.C. § 2000e–5. That section permits "a person claiming to be aggrieved" to file a charge with the Commission. After proceedings before the Commission have continued for a specified time a suit may be started "by the person claiming to be aggrieved." 42 U.S.C. § 2000e–5(e). A person claiming to be aggrieved may never have been an employee of the defendant. Indeed the Act forbids discrimination not only by employers, 42 U.S.C. § 2000e–2(a) (2), but also by potential employers, 42 U.S.C. § 2000e–2(a) (1), by labor organizations, 42 U.S.C. § 2000e–2(c), and by employment agencies, 42 U.S.C. § 2000e–2(b). An aggrieved person obviously is any person aggrieved by any of the forbidden practices.[2] Hackett says that he was discriminated against in seniority and in vacation schedules, and was discharged, because of his race. If this is so he has been aggrieved. Hackett says the Union discriminated against him because of his

---

pleaded dates of the discharge and the filing of the charge. The § 1981 cause of action is not controlled by the time limit on § 2000e–5(d).

2. In Tipler v. E. I. Dupont de Nemours and Co., 443 F.2d 125 (6 Cir. 1971) the Sixth Circuit considered and rejected the contention that only employees have standing to sue under Title VII. See also Carr v. Conoco Plastics, Inc., 423

F.2d 57 (5 Cir. 1970); Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122 (5 Cir. 1969); Wilson v. Monsanto Co., 315 F.Supp. 977 (E.D.La. 1970); Kemp v. General Electric Co., 60 L.C. ¶ 9238 (N.D.Ga.1969); Gunn v. Layne & Bowler, Inc., 56 L.C. ¶ 9088 (W.D.Tenn.1967). Cf. Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 715 (7 Cir. 1969).

race. If this is so he has been aggrieved.

■ Even if we assume that because Hackett has accepted pension benefits he is not now being aggrieved, his contention that he should be recompensed for the aggrievement he suffered from the date of his discharge to November 1, 1969, the date he became a pensioner, would remain. The use in 42 U.S.C. § 2000e–5 of the language "a person claiming to be aggrieved" shows a congressional intention to define standing as broadly as is permitted by Article III of the Constitution. Certainly Hackett alleges injury in fact. See Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); Shannon v. United States Department of Housing and Urban Development, 436 F.2d 809 (3rd Cir. 1970).

> The district court suggests:
>
> "The plaintiff had the option of pressing his claims in court to determine the validity of his charges of discrimination and unlawful employment practices. He chose instead to apply for and accept the retirement benefits under the Pension Plan." 321 F.Supp. 312, 315.

This suggestion implies that the choices are of necessity mutually exclusive. Nothing in Title VII makes them so. Nothing in the terms of the pension plan makes them so. In Fekete v. United States Steel Corp., 424 F.2d 331 (3rd Cir. 1970), this court rejected the contention that a claimant lost his right to proceed under ·Title VII by electing to pursue simultaneously a contractual remedy which afforded partial relief. We seriously doubt that the courts would recognize the validity of any pension plan provision purporting to grant earned pension benefits on the condition that the recipient forego access to the courts to redress past employment discrimination. But there is no such provision in the plan before us.

Moreover, Hackett's position is that he accepted the pension out of dire necessity, and that he wants to be reinstated. Without prejudging the matter, it seems entirely likely that if he proves his charges the court will be able to work an accommodation between the remedy of reinstatement and the provisions of the pension plan. Thus even for the future Hackett alleges injury in fact, and there is a possibility of some relief.

The only authority cited by the district court for its holding that pensioners lack standing is Pittsburg Plate Glass Co., Chemical Division v. NLRB, 427 F.2d 936 (6th Cir. 1970), cert. granted, 401 U.S. 907, 91 S.Ct. 867, 27 L.Ed.2d 804 (1971). That case holds that it is not an unfair labor practice under § 8(a) (5) of the National Labor Relations Act, as amended, 29 U.S.C. § 158(a) (5), for an employer to refuse to bargain with a union about an increase in benefits for already retired employees because retired pensioners are not a part of the bargaining unit. The case is no authority on the issue of standing to bring an action under Title VII of the 1964 Civil Rights Act. Indeed that case makes clear the narrow compass of its holding by pointing out that it is inapplicable to cases of "discrimination in regard to hire or tenure" in violation of § 8(a) (3) of the National Labor Relations Act, 427 F.2d at 943.

■ What we have said with respect to Hackett's standing to sue under Title VII applies at least equally to his right to sue under 42 U.S.C. § 1981. That cause of action was not discussed by the district court, undoubtedly because the case was decided before the decision of this court in Young v. International Telephone & Telegraph Co., 438 F.2d 757 (3rd Cir. 1971). Hackett is a Negro and purports to represent potential and actual Negro employees in eliminating discrimination by McGuire and by Local 187. The *Young* case recognizes his right to bring such a suit under § 1981.

■ The national public policy reflected both in Title VII of the Civil Rights Act of 1964 and in § 1981 may

not be frustrated by the development of overly technical judicial doctrines of standing or election of remedies. If the plaintiff is sufficiently aggrieved so that he claims enough injury in fact to present a genuine case or controversy in the Article III sense, then he should have standing to sue in his own right and as a class representative.

The district court's order dismissing the complaint for lack of standing will be reversed.