United States Court of Appeals,

Fifth Circuit.

No. 95-50145.

Frank HOLT;  Linda Holt, Plaintiffs-Appellees,

v.

JTM INDUSTRIES, INC., Defendant-Appellant,

and

USPCI Inc., Defendant.

Aug. 7, 1996.

Appeal from the United States District Court for the Western District of Texas.

Before GARWOOD, EMILIO M. GARZA and DENNIS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Defendant JTM Industries, Inc. ("JTM") appeals from the district court's denial of its motion for judgment as a matter of law.  We reverse and dismiss the case with prejudice.

I

Plaintiffs Linda and Frank Holt were employees at JTM's Limestone Facility ("Facility") in Jewett, Texas.  After JTM terminated Linda, she filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Commission on Human Rights ("TCHR").  Approximately two weeks after JTM received notice of Linda's administrative complaint, Frank was placed on paid administrative leave.  Frank was subsequently offered another job with JTM in Atlanta which he accepted, but then voluntarily quit after several weeks.

Linda and Frank Holt filed a complaint against JTM and its

parent corporation, USPCI, alleging, *inter alia,* violations of their rights under the Age Discrimination in Employment Act of 1967 ("ADEA").  Specifically, the Holts alleged age discrimination, pursuant to 29 U.S.C. § 621, and retaliation against Frank for Linda's administrative complaint of age discrimination, pursuant to 29 U.S.C. § 623(d).  The claims that survived summary judgment were tried before a jury.  At the close of evidence, the district court refused to submit any of the Holts' claims against USPCI to the jury, denied JTM's motion for judgment as a matter of law, and submitted the Holts' claims against JTM to the jury.  The jury rejected all of the Holts' claims against JTM, except for Frank's claim of retaliation.  The district court entered judgment in conformity with the jury verdict, implicitly denying JTM's third motion for judgment as a matter of law.  JTM filed a timely notice of appeal.

II

JTM argues that the district court erred in denying its motion for judgment as a matter of law.  We review a district court's disposition of a motion for judgment as a matter of law *de novo.  Wardlaw v. Inland Container Corp.,* 76 F.3d 1372, 1375 (5th Cir.1996).  We must consider all of the evidence "in the light and with all reasonable inferences most favorable to the party opposed to the motion."  *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc).  There must be a conflict of substantial evidence to create a jury question.  *Id.* at 375.

Section 623(d) of the ADEA protects employees from

retaliation for opposing acts of age discrimination, or for charging, testifying, assisting, or participating in any manner in an investigation, proceeding, or litigation under the ADEA. 29 U.S.C. § 623(d). A plaintiff establishes a prima facie case of retaliation under the ADEA by showing: (1) that he engaged in activity protected by the ADEA; (2) that there was an adverse employment action; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision. *Shirley v. Chrysler First, Inc.,* 970 F.2d 39, 42 (5th Cir.1992).

JTM alleges that the district court erred in denying its motion for judgment as a matter of law because Frank did not engage in an activity that is protected by the ADEA. Specifically, JTM argues that Frank did not oppose JTM's practices which Linda alleged were discriminatory, nor did he make a charge, testify, assist or participate in any manner in Linda's age discrimination complaint, as required under 29 U.S.C. § 623(d). The Holts do not argue that Frank participated in Linda's filing a charge of age discrimination. Instead, they argue that Linda's charge of age discrimination, which is protected activity under the ADEA, should be imputed to her husband Frank.

The plain language of § 623(d) prohibits an employer from retaliating against an employee because "such individual" has opposed a practice prohibited by the ADEA or has participated "in any manner" in a proceeding under the ADEA. This section permits third parties to sue under § 623(d) if they have engaged in the

3

enumerated conduct, even if the conduct was on behalf of another employee's claim of discrimination. *See Jones v. Flagship Intern.,* 793 F.2d 714, 727 (5th Cir.1986) (acknowledging that "employee opposition to discriminatory employment practices directed against a fellow employee may constitute" protected activity under the anti-retaliation provision of Title VII), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987); *Mandia v. ARCO Chemical Co.,* 618 F.Supp. 1248, 1250 (W.D.Pa.1985) (holding that husband could sue under the anti-retaliation provision of Title VII because he "participated, supported and aided his wife in filing" EEOC charges of sexual harassment).[1]  The Holts urge an even broader interpretation of § 623(d).  They argue that an individual suing for retaliation need not personally engage in any of the enumerated conduct in § 623(d).  Instead, the Holts contend that once an employee's spouse engages in protected activity, the non-complaining spouse automatically has standing to sue for retaliation under § 623(d).  This interpretation is necessary, according to the Holts, to eliminate the risk that an employer will discriminate against a complaining employee's spouse in retaliation for the complaining employee's protected activities.

The Holts cite *De Medina v. Reinhardt,* 444 F.Supp. 573 (D.D.C.1978), as support for their position.  The plaintiff in *De Medina* sued under the anti-retaliation provision of Title VII for

---

[1]The anti-retaliation provisions of the ADEA and Title VII are similar and "cases interpreting the latter provision are frequently relied upon in interpreting the former." *Shirley,* 970 F.2d at 42 n. 5.

4

retaliation against her because of her husband's anti-discrimination activities. *De Medina,* 444 F.Supp. at 574. The district court concluded that "tolerance of third-party reprisals would, no less than tolerance of direct reprisals, deter persons from exercising their protected rights under Title VII," which would be contrary to legislative intent. *Id.* at 580. Therefore, the court held that a plaintiff could sue for retaliation for a relative's or friend's protected activities. It is unclear from the district court's statement of facts whether the plaintiff participated in any manner in her husband's activities. To the extent that this case stands for the proposition that a plaintiff automatically has standing to sue for retaliation when a relative or friend engages in protected activity, we disagree.

Such a rule of automatic standing might eliminate the risk that an employer will retaliate against an employee for their spouse's protected activities. However, we conclude that such a rule would contradict the plain language of the statute and will rarely be necessary to protect employee spouses from retaliation. Section 623(d) prohibits retaliation against an employee who has opposed a discriminatory practice or has participated "in any manner" in a proceeding under the ADEA. This broad language is consistent with Congress's remedial goals in enacting the ADEA. Congress intended the anti-retaliation provision of the ADEA to enable employees to engage in protected activities without fear of economic retaliation. *See E.E.O.C. v. Ohio Edison Co.,* 7 F.3d 541, 544 (6th Cir.1993) (stating that the purpose of the ADEA "is to

5

prevent fear of economic retaliation from inducing employees "quietly to accept [unlawful] conditions' ") (alteration in original) (quoting *Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 292, 80 S.Ct. 332, 335, 4 L.Ed.2d 323 (1960)). To accomplish this goal, Congress drafted § 623(d) to give those employees who oppose discriminatory practices or who participate "in any manner in an investigation [or] proceeding" under the ADEA automatic standing to sue if their employers retaliate against them for their actions.

We recognize that there is a possible risk that an employer will discriminate against a complaining employee's relative or friend in retaliation for the complaining employee's actions. However, we believe that the language that Congress has employed in § 623(d) will better protect employees against retaliation than we could by trying to define the types of relationships that should render automatic standing under § 623(d). If we hold that spouses have automatic standing to sue their employers for retaliation, the question then becomes, which other persons should have automatic standing to guard against the risk of retaliation? In most cases, the relatives and friends who are at risk for retaliation will have participated *in some manner* in a co-worker's charge of discrimination. The plain language of § 623(d) will protect these employees from retaliation for their protected activities. However, when an individual, spouse or otherwise, has not participated "*in any manner* " in conduct that is protected by the ADEA, we hold that he does not have automatic standing to sue for

6

retaliation under § 623(d) simply because his spouse has engaged in protected activity.[2]

The evidence at trial revealed that Frank was not aware of Linda's intent to file a charge of age discrimination against JTM until a few days before she actually made the charge. He testified that when TCHR mailed Linda a copy of the notice of the filing and service of her complaint, he retrieved it from the post office and looked at it with her. Frank's only other involvement with Linda's protected activities involved carrying out his duties as an employee. The TCHR served the notice of Linda's complaint on JTM to Frank's attention as Plant Manager. Frank testified that he never opened the notice, but he assumed that it contained Linda's complaint. After receiving the notice, Frank called the Manager of Human Resources for JTM, Debbie Bankston, and told her that JTM had been served with papers from the TCHR. Frank testified that he followed Ms. Bankston's orders and sent the notice via Federal

_____

[2]The only other circuit case that has addressed a similar issue is not inconsistent with our interpretation of § 623(d). Interpreting the anti-retaliation provision of Title VII, 42 U.S.C. § 2000e-3(a), the Sixth Circuit held that an employee is protected from retaliation where the employee's representative opposes a discriminatory practice. *E.E.O.C. v. Ohio Edison Co.,* 7 F.3d 541, 545 (6th Cir.1993). The plaintiff in *Ohio Edison* alleged that his employer had discriminated against him by withdrawing an offer of reinstatement "because a co-employee engaged in protected activity and protested [the plaintiff's] discriminatory discharge *on his behalf* and threatened that a claim would be filed for the discriminatory discharge." *Id.* at 546 (emphasis added). The fact that the employee had engaged a "representative" to act on his behalf to protest his discharge illustrates that the employee had opposed a discriminatory employment practice, as required under the anti-retaliation provision of Title VII. Therefore, unlike Frank Holt, the plaintiff in *Ohio Edison* fell within the plain meaning of the statute as one who has standing to sue for retaliation.

Express to JTM's Human Resources Department.

This evidence does not establish that Frank participated in Linda's protected activities or that he opposed JTM's alleged discriminatory practice. There is no evidence that Frank helped Linda prepare her charge or that he assisted in any way in its filing. At best, Frank was a passive observer of Linda's protected activities. As such, he does not have standing to sue for retaliation under § 623(d).

### III

For the foregoing reasons, we REVERSE the judgment of the district court and DISMISS the case with prejudice.

DENNIS, Circuit Judge, dissenting:

Frank Holt proved to the satisfaction of a jury that his employer engaged in adverse employment actions against him in retaliation for his wife's filing of a claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* Nonetheless, the majority holds that Mr. Holt lacks "standing" to sue under that Act's anti-retaliation provision because he did not prove that he personally engaged in the protected conduct giving rise to the employer's wrongful action. Because the majority relies on the concept of standing as the basis of its reversal, when at best it has presented an argument that Mr. Holt has no cause of action under the statute; because the decision imposes a rigid literalism in its interpretation of the anti-retaliation provision that undermines the purpose of the statute; and because the opinion ignores relevant case law and agency decisions

8

construing the similar anti-retaliation provision of Title VII to provide a cause of action for retaliation against an employee for the protected activity of that employee's family member, I dissent.

The question of standing "[i]n essence ... is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). The constitutional dimension of standing "imports justiciability: whether the plaintiff has made out a "case or controversy' between himself and the defendant within the meaning of Art. III." *Id.,* 422 U.S. at 498, 95 S.Ct. at 2205. The Supreme Court has formulated a three-part test to determine whether the plaintiff has standing for purposes of Article III, requiring the plaintiff to allege (1) an actual or threatened injury that is (2) traceable to the conduct of the defendant and (3) is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); *see 6A Moore's Federal Practice* § 57.11[2.-1], at 57-89. Because the requirement of injury is part of the Article III constitutional test for standing, Congress may not authorize suit in the absence of an injury. *Lujan, supra.* However, as the *Lujan* Court noted, Congress is empowered to create substantive rights and to authorize suit for their enforcement and consequently may define an injury in a way that provides the basis for standing even in the absence of

other injury to the plaintiff. *See, e.g., Havens Realty Corp. v. Coleman,* 455 U.S. 363, 373, 102 S.Ct. 1114, 1121, 71 L.Ed.2d 214 (1982).

In addition to the minimum constitutional requirements, the Court has recognized other limits on the class of persons who may invoke the federal judicial power. *Warth,* 422 U.S., at 499, 95 S.Ct., at 2205. These prudential considerations are self-imposed judicial limits on the exercise of federal jurisdiction and include the following requirements: (1) that a litigant generally assert his own and not another's interests; (2) that the federal courts not adjudicate mere generalized grievances that are more appropriately addressed by the representative branches of government; and (3) that the plaintiff's alleged injury arguably fall within the "zone of interests" protected by the law invoked. *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *Warth,* 422 U.S. at 499-500, 95 S.Ct. at 2205. Although Congress may not remove the Article III requirement that the plaintiff allege a distinct and palpable injury to himself, it can grant standing to persons who meet Article III requirements even though they would otherwise be barred by prudential standing considerations. *Id.* at 501, 95 S.Ct. at 2206.

Section 7(c) of the ADEA provides that "*[a]ny person aggrieved* may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this Act...." 29 U.S.C. § 626(c)(1) (emphasis supplied). Through this language, Congress indicated its intent to afford standing to

the full limits permitted under Article III. In *Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 209, 93 S.Ct. 364, 367, 34 L.Ed.2d 415 (1972), the Supreme Court construed the term "aggrieved person" in § 810 of the Fair Housing Act, which the Act defined to include "[a]ny person who claims to have been injured by a discriminatory housing practice," 42 U.S.C. § 3610(a), to demonstrate a congressional intent to confer standing to the fullest extent permitted by Article III of the United States Constitution. In reaching this conclusion, the Court relied on the holding in *Hackett v. McGuire Bros.,* 445 F.2d 442 (3rd Cir.1971), that the language of Title VII authorizing the filing of suits "by a person claiming to be aggrieved" shows " "a congressional intention to define standing as broadly as is permitted by Article III of the Constitution.' " *Trafficante,* 409 U.S., at 209, 93 S.Ct. at 367 (quoting *Hackett,* 445 F.2d at 446). This court, in turn, applied *Trafficante* to find that "the strong similarities between the language, design, and purposes of Title VII and the Fair Housing Act require that the phrase "a person claiming to be aggrieved' in § 706 of Title VII must be construed in the same manner that *Trafficante* construed the term "aggrieved person' in § 810 of the Fair Housing Act." *EEOC v. Mississippi College,* 626 F.2d 477, 482 (5th Cir.1980) (citing *EEOC v. Bailey Co.,* 563 F.2d 439, 450-54 (6th Cir.1977), *cert. denied,* 435 U.S. 915, 98 S.Ct. 1468, 55 L.Ed.2d 506 (1978); *Waters v. Heublein,* 547 F.2d 466, 469-70 (9th Cir.1976), *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1100 (1977)), *cert. denied,* 453 U.S. 912, 101 S.Ct.

11

3143, 69 L.Ed.2d 994 (1981). *See also Fair Employment Council v. BMC Marketing Corp.,* 28 F.3d 1268, 1278 (D.C.Cir.1994) (citing *Gray v. Greyhound Lines,* 545 F.2d 169, 176 (D.C.Cir.1976)).

Following this line of reasoning, the pertinent language of the ADEA, "[a]ny person aggrieved may bring a civil action," 29 U.S.C. § 626(c)(1), similarly indicates that Congress intended to provide standing under the Act to the fullest extent available under Article III. *See Horne v. Firemen's Retirement System of St. Louis,* 69 F.3d 233, 235 (8th Cir.1995) (plaintiff satisfying Article III requirements has standing under the ADEA); *Barchers v. Union Pacific Railroad Co.,* 765 F.Supp. 595, 596-97 (W.D.Mo.1991) (same). Accordingly, any "person aggrieved" is required by the ADEA to meet only the minimum constitutional standing requirements of Article III. Mr. Holt clearly satisfies these minimal standing requirements for he alleged (1) that he was injured (2) as a result of the defendant's conduct and (3) a favorable decision granting him compensatory and/or injunctive relief is likely to redress his injuries.[3]

---

[3]Even if prudential standing considerations were factors, Mr. Holt has adequately established that he could clear these hurdles as well. He has sued to redress injuries he personally suffered as a result of the adverse employment actions his employer engaged in through its retaliation against him for Mrs. Holt's protected conduct, and thus cannot be said to be asserting the rights of others. Similarly, he does not present a "generalized grievance," as he complains of specific harm the employer directed at him. Although the majority does not undertake a standing analysis, its determination that Mr. Holt does not have standing because he did not prove involvement in his wife's protected activity appears best explained as a conclusion that Mr. Holt is not within the "zone of interests" protected by the ADEA. However, as the Supreme Court pointed out in *Clarke v. Securities Industry Ass'n.,* 479 U.S. 388, 400 n. 16, 107 S.Ct. 750, 757 n. 16, 93 L.Ed.2d 757 (1987), the

12

In finding that Mr. Holt lacks standing to sue, the majority has confused the concepts of standing and cause of action. As the Supreme Court explained in *Davis v. Passman,* 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979):

> [S]tanding is a question of whether a plaintiff is sufficiently adversary to a defendant to create an Art. III case or controversy, or at least to overcome prudential limitations on federal court jurisdiction, *see Warth v. Seldin,* 442 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975); cause of action is a question of whether a particular plaintiff is a member of the class of litigants that may, as a matter of law, appropriately invoke the power of the court....

In *Davis,* the Court determined that the appellate court had confused the question of whether petitioner had standing with the question of whether she had asserted a proper cause of action. The Court observed that while "[t]he nature of petitioner's injury ... is relevant to the determination of whether she has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of

---

"zone of interest" test has primarily been applied in claims brought under the Administrative Procedure Act and "is most usefully understood as a gloss on the meaning of § 702 [of that Act].... While inquiries into reviewability or prudential standing in other contexts may bear some resemblance to a "zone of interest' inquiry under the APA, it is not a test of universal application." Nonetheless, assuming its applicability here, Mr. Holt, as an employee within the meaning of the ADEA who has alleged injury to himself from his employer's retaliatory conduct in violation of the Act, clearly satisfies any requirement that he be *arguably* within the zone of interest of the ADEA. The "zone of interest" test only "denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* at 399, 107 S.Ct. at 757; *see also City of Milwaukee v. Block,* 823 F.2d 1158, 1165-66 (7th Cir.1987) (discussing *Clarke* 's clarification of test).

13

difficult constitutional questions,' ... [w]hether petitioner has asserted a cause of action ... depends not on the quality or extent of her injury, but on whether the class of litigants of which petitioner is a member may use the courts to enforce the right at issue." *Id.,* 442 U.S. at 241 n. 18, 99 S.Ct. at 2274 n. 18 (quoting *Baker v. Carr,* 369 U.S. at 204, 82 S.Ct. at 703).

The majority's conclusion that a victim of adverse employment actions conducted in retaliation for the protected activity of the victim's family member lacks standing to sue unless the victim alleges and proves actual involvement in the protected conduct is more appropriately viewed as a determination that a victim who suffers retaliatory actions for no reason other than his or her relationship to the person engaging in protected conduct is not a member of a class the ADEA is intended to protect and thus has no cause of action. This conclusion relies on a rigid, literal interpretation of the ADEA's anti-retaliation provision that undermines the broad purposes of the statute.

Congress enacted the ADEA in 1967 as part of an ongoing effort to eradicate discrimination in the workplace. *McKennon v. Nashville Banner Publishing Co.,* --- U.S. ----, ----, 115 S.Ct. 879, 884, 130 L.Ed.2d 852 (1995) (citing Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* the Americans with Disability Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.,* the National Labor Relations Act, 29 U.S.C. § 158(a) and the Equal Pay Act of 1963, 29 U.S.C. § 206(d)); *see Hodgson v. First Federal Savings and Loan Ass'n of Broward County, Fl.,* 455 F.2d 818, 820

14

(5th Cir.1972). The ADEA, like most of these anti-discrimination statutes, contemplates both agency and private action to enforce its provisions. *See* 29 U.S.C. § 626; *see, e.g.,* 42 U.S.C. § 2000e-5 (Title VII); 42 U.S.C. § 12117 (ADA). As a means of promoting its broad anti-discrimination goals, the Act prohibits an employer from engaging in adverse employment action in retaliation for its employee's protected conduct. *See* 29 U.S.C. 623(d); *see, e.g.,* 42 U.S.C. § 2000e-3 (Title VII); 42 U.S.C. § 12206 (ADA). Under the ADEA, federal courts have discretion to "grant such legal or equitable relief as may be appropriate to effectuate the purposes of [the Act]." 29 U.S.C. § 626(b); *McKennon,* --- U.S. at ----, 115 S.Ct. at 884.

The anti-retaliation provisions of the ADEA and similar statutes clearly are intended to encourage the enforcement of rights protected under the statutes. As this court has observed in recognizing a claim for retaliation under 42 U.S.C. § 1981, "[w]ere we to protect retaliatory conduct, we would in effect be discouraging the filing of meritorious civil rights suits and sanctioning further discrimination against those persons willing to risk their employer's vengeance by filing suits." *Goff v. Continental Oil Co.,* 678 F.2d 593, 598 (5th Cir.1983). *See also EEOC v. Cosmair, Inc., L'Oreal Hair Care Div.,* 821 F.2d 1085, 1088 (5th Cir.1987) (purpose of anti-retaliation provision of ADEA is "to protect persons who "resort[ ] to the legal procedures that Congress has established in order to right congressionally recognized wrongs,' *East v. Romine, Inc.,* 518 F.2d 332, 340 (5th

15

Cir.1975)."); *Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1214 (2nd Cir.1993) ("The purpose of the ADEA's anti-retaliation provision is to protect persons who initiate a suit to vindicate a right that Congress has recognized as a wrong."); *cf. Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 292, 80 S.Ct. 332, 335, 4 L.Ed.2d 323 (1960) (observing in relation to anti-retaliation provision of Fair Labor Standards Act that "[b]y the proscription of retaliatory acts set forth in § 15(a)(3), and its enforcement in equity by the Secretary pursuant to § 17, Congress sought to foster a climate in which compliance with the substantive provisions of the Act would be enhanced."); *Jones v. Flagship International,* 793 F.2d 714, 725 (5th Cir.1986) (recognizing that the provisions of Title VII "must be construed broadly in order to give effect to Congress' intent in eliminating invidious employment practices," and that "since the enforcement of Title VII rights necessarily depends on the ability of individuals to present their grievances without the threat of retaliatory conduct by their employers, rigid enforcement of [Title VII's anti-retaliation provision] is required."), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987).

The jury in this case determined that the employer, JTM Industries, Inc. (JTM), had replaced Frank Holt as plant manager in retaliation for his wife's EEOC filing under the ADEA. The jury thus found a causal connection between Mrs. Holt's EEOC filing and the employer's replacement of Frank Holt. The majority's determination that Mr. Holt nevertheless may not pursue a claim of

16

retaliation because he did not demonstrate that he personally was engaged in protected conduct relies, as the majority admits, on a strict reading of the anti-retaliation provision of the ADEA. That provision, in pertinent part, provides:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment ... because such individual ... has opposed any practice made unlawful by this section, or because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this Act.

29 U.S.C. § 623(d).

The majority's reading of the provision flouts the clear purpose of the ADEA's prohibition of retaliatory conduct to ensure that claimants are secure to pursue their claims of discrimination. Under the majority's approach, in the instances when both an ADEA complainant and his or her relative work for the same employee, the anti-retaliation provision would not prevent the employer from taking adverse employment action against the family member, even though such action would be motivated by the relative's obvious connection to the complainant, thereby defeating a central purpose of the statute. The literal meaning of the anti-retaliation provision should not be used to undermine the clear purpose and intent of the ADEA. As the Supreme Court has observed:

> It is a well-established canon of statutory construction that a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute:

> > The general words used in the clause ... taken by themselves, and literally construed, without regard to the object in view, would seem to sanction the claim of the plaintiff. But this mode of expounding a statute has never been adopted by an enlightened tribunal because it

17

> is evident that in many cases it would defeat the object which the Legislature intended to accomplish. And it is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, *but will take in connection with it the whole statute ... and the objects and policy of the law....*

*Bob Jones University v. United States,* 461 U.S. 574, 585, 103 S.Ct. 2017, 2025, 76 L.Ed.2d 157 (1983) (quoting *Brown v. Duchesne,* 19 How. 183, 194, 15 L.Ed. 595 (1857)) (emphasis supplied in *Bob Jones* ). *See also Almendarez v. Barrett-Fisher Co.,* 762 F.2d 1275, 1278 (5th Cir.1985) ("literal statutory construction is inappropriate if it would produce a result in conflict with the legislative purpose clearly manifested in an entire statute or statutory scheme or with clear legislative history.").

The federal anti-discrimination laws are to be liberally construed to effectuate their remedial purposes. *See, e.g., MacDonald v. Eastern Wyoming Mental Health Center,* 941 F.2d 1115, 1118 (10th Cir.1991) ("the ADEA is remedial and humanitarian legislation and should be liberally interpreted to effectuate the congressional purpose of ending age discrimination.") (quoting *Dartt v. Shell Oil Co.,* 539 F.2d 1256, 1260 (10th Cir.1976), *aff'd* 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977)); *Kale v. Combined Ins. Co.,* 861 F.2d 746, 751 (1st Cir.1988) (same); *Rabzak v. County of Berks,* 815 F.2d 17, 20 (3rd Cir.1987) (same); *Hamilton v. Rodgers,* 791 F.2d 439, 442 (5th Cir.1986) ("Title VII should be accorded a liberal interpretation in order to effectuate the purpose of Congress to eliminate the inconvenience, unfairness, and humiliation of ethnic discrimination.") (quoting *Rogers v.*

18

*EEOC,* 454 F.2d 234, 238 (5th Cir.1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972)).  This canon of construction holds true in the context of interpreting anti-retaliation provisions.  As the Sixth Circuit observed in *EEOC v. Ohio Edison Co.,* 7 F.3d 541, 545 (6th Cir.1993):

> [C]ourts have routinely adopted interpretations of retaliation provisions in employment statutes that might be viewed as outside the literal terms of the statute in order to effectuate Congress's clear purpose in proscribing.  Contrary to defendant's assertions, courts have frequently applied the retaliation provisions of employment statutes to matters not expressly covered by the literal terms of these statutes where the policy behind the statute supports a non-exclusive reading of the statutory language.

*See also McDonnell v. Cisneros,* 84 F.3d 256, 262 (7th Cir.1996) (eschewing a strict interpretation of Title VII's anti-retaliation provision to find that an employer violated that statute by retaliating against the plaintiff-supervisor for failing to prevent subordinates from filing complaints under the statute).  In *McDonnell,* Judge Posner, writing for the court, acknowledged that the plaintiff's claim did not come with the literal terms of Title VII's anti-retaliatory provision, but explained:

> The reasons for this wording ... so far as we are able to discover (there is no pertinent legislative history), is that in the ordinary case an employer would have no reason to retaliate against someone who did *not* file a compliant, testify, etc.  Generally one retaliates against someone because of something he did rather than because of something someone else did.  Not always.  There is such a thing as collective punishment.  But that possibility is unlikely to have been in the forefront of congressional thinking when the retaliation provision was drafted.

*Id.* (emphasis original).  In concluding that the plaintiff had a valid retaliation claim, the court observed that it does no great violence to the statutory language to correct Congress's oversight

19

by construing the provision to recognize the plaintiff's claim.[4]
*Id.*

The same holds true here. Situations in which spouses or other related parties work for the same employer do not occur with great frequency. The majority recognizes "a possible risk that an employer will discriminate against a complaining employee's relative or friend in retaliation for the complaining employee's actions." Op. at ----. Nonetheless, my colleagues deem the risk trivial compared to the potential harm of having courts "trying to define the types of relationships that should render automatic standing under § 623(d)." *Id.* at ---- - ----. The majority's concerns about involving the courts in assessing what relationships give rise to "standing" are both overblown and misplaced—the ultimate focus in a retaliation claim such as this is not upon whether a particular relationship exists between the victim of retaliation and the individual who has engaged in protected conduct; rather, the crucial issue is whether there is a causal connection between the employer's adverse employment action against the victim and the protected conduct engaged in by the relative or friend. There is little reason to worry that a recognition of claims such as Mr. Holt's will overburden federal judges when in reality all that would be required is a simple modification of the

---

[4]The opinion additionally observed that the plaintiff's "passive opposition" to the employer's desire that he prevent his subordinates from filing discrimination complaints could be construed as "opposition" to an unlawful practice and "participation" in protected conduct plainly covered by the anti-retaliation provision. *McDonnell,* 84 F.3d at 262.

*prima facie* case applied to establish retaliation:   Instead of requiring the plaintiff to prove "(1) that he engaged in activity protected by the ADEA;   (2) that an adverse employment action occurred;   and (3) that a causal link between the participation in the protected activity and the adverse employment decision exists," *Ray v. Iuka Special Mun. Separate School Dist.,* 51 F.3d 1246, 1249 (5th Cir.1995) (citing *Shirley v. Chrysler First, Inc.,* 970 F.2d 39, 42 (5th Cir.1992), the plaintiff would have to show (1) that an employee engaged in activity protected by the ADEA;   (2) that an adverse employment action occurred to the plaintiff;   and (3) that a causal link between the participation in the protected activity and the adverse employment decision exists.   In this case, the jury found that JTM replaced Frank Holt because his wife had filed an EEOC claim.[5]   To condone such retaliation because it fails to fall squarely within the literal terms of the anti-retaliation provision, despite the ADEA's design to prohibit retaliation in

---

[5]The trial court's instructions on the retaliation claim were as follows:

> As to Frank Holt's retaliation claim, he must prove the following elements by a preponderance of the evidence:
>
> 1. That his wife filed a charge of discrimination against Defendant:
>
> 2. That he was removed from the position of Manager;   and
>
> 3. That there was a causal connection between his wife's filing a charge of discrimination and his removal as Manager.

Record, Vol. XI, at 838.

21

order to promote the free exercise of rights protected under that Act, elevates form over substance and permits employers to evade the reach of the statute by making relatives or friends of complaining parties the "whipping boys" for the protected conduct of others.

Finally, the majority decision flies in the face of agency and federal court decisions that hold that the parallel anti-retaliation provision of Title VII prohibits the type of conduct in which JTM engaged here.  Although the majority acknowledges that "the anti-retaliation provisions of the ADEA and Title VII are similar and "cases interpreting the latter provision are frequently relied upon in interpreting the former.' "  Op. at ----, n. 1 (quoting *Shirley v. Chrysler First, Inc.,* 970 F.2d 39, 42 n. 5 (5th Cir.1992)),[6] it ignores the overwhelming weight of decisions construing the anti-retaliation provision of Title VII to provide a cause of action where an employer retaliates against the plaintiff because of the protected conduct of a friend or relative.

As early as 1975, the EEOC recognized a violation of Title VII when an employer discharged a husband in retaliation for his wife's

---

[6]The relevant provision of Title VII provides, in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.

42 U.S.C. § 2000e-3(a).

22

EEOC claim. EEOC Dec. No. 76-33 (Sept. 11, 1975), 1973-1983 CCH EEOC Dec. ¶ 6626. In a subsequent case, the agency specifically held that it had jurisdiction to investigate a claim that the charging party had been discharged in retaliation for his wife's filing a charge of discrimination against the employer. EEOC Dec. 77-34 (Aug. 16, 1977), 1973-1983 CCH EEOC Dec. ¶ 6581. The agency observed that while the language of Title VII's anti-retaliation provision does not directly determine the question of jurisdiction, "[t]he language does manifest a congressional intent to extend coverage over a broad base of activities," and acknowledged that "where it can be shown that an employer discriminated against an individual because he or she was related to a person who filed a charge, it is clear that the employer's intent is to retaliate against the person who filed the charge." *Id.* Consequently, the agency concluded that "discrimination against an employee because he or she has a familial relationship with a person who has filed a charge of discrimination is violative of Section 704(a) of Title VII." *Id.*

Additionally, the agency has formally articulated its position on retaliation. Section 614 of its Interpretative Manual, in pertinent part, provides:

§ 614.1 *Introduction*

(A) *General*—Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, is intended to provide "exceptionally broad protection" for protestors of discriminatory employment practices. See *Pettway v. American Cast Iron Pipe Co.,* 411 F.2d 998, 1004-1005, 2 EPD § 10,011 (5th Cir.1969). Section 4(d) of the ADEA is virtually identical to § 704(a) and provides the same protection.... (footnote omitted).

23

\*   \*   \*   \*   \*   \*

§ 614.3 *Essential Elements of a Retaliation Violation*

\*   \*   \*   \*   \*   \*

b) *Opposition or Participation*

\*   \*   \*   \*   \*   \*

... [A]s to both opposition and participation, the retaliation provisions of Title VII and the ADEA also prohibit retaliation against someone so closely related to the person exercising his/her statutory rights that it would discourage or prevent the person from exercising those rights. *Clark v. R.J. Reynolds Tobacco Co.,* 28 EPD § 32,500, (E.D.La.1982), 1982 WL 2277 (E.D.La.); *see also* Commission Decision No. 76-33, CCH EEOC Decisions (1983) § 6626.

2 EEOC Compliance Manual § 614, at 614.0001 & 614.0008-614.0009 (Apr. 1988).

Further, federal courts addressing this issue have uniformly concluded that an employer violates Title VII's anti-retaliation provision by taking adverse employment action against an employee because of the protected activity of a family member or friend. In *McKenzie v. Atlantic Richfield Co.,* 906 F.Supp. 572, 575 (D.Colo.1995), the court concluded that the plaintiff-husband had a cause of action for his employer's adverse action against him in retaliation for his wife's protected activity, observing that "[a]s other courts have held ... the antireprisal provision of Title VII precludes an employer from discriminating against an individual because that person's spouse has engaged in protected activity." *Id.* (citing *Wu v. Thomas,* 863 F.2d 1543 (11th Cir.1989); *De Medina v. Reinhardt,* 444 F.Supp. 573 (D.D.C.1978)). *See also Turman v. Robertshaw Control Co.,* 869 F.Supp. 934, 941 (N.D.Ga.1994) (recognizing that "[i]n a case of an alleged retaliation for

24

participation in a protected activity by a close relative who is a co-employee, the first element of the prima facie case is modified to require the plaintiff to show that the relative was engaged in statutorily protected expression."); *Clark v. R.J. Reynolds Tobacco Co.,* Civ. No. 79-7, 1982 WL 2277, at *7 (E.D.La. Feb. 2, 1982) (finding *prima facie* case where plaintiff received reprimand allegedly in retaliation for his son's EEOC filing); *De Medina v. Reinhardt,* 444 F.Supp. 573, 580 (D.D.C.1978) (acknowledging that Title VII does not expressly consider the possibility of third-party reprisals, but concluding that "[s]ince third-party reprisals would, no less than the tolerance of direct reprisals, deter persons from exercising their protected rights under Title VII, the Court must conclude, as has the only other court to consider the issue, *Kornbluh v. Stearns & Foster Co.,* 73 F.R.D. 307, 312 (N.D.Ohio 1976), that section 2000e-3 proscribes the alleged retaliation of which plaintiff complains."). *Cf. McDonnell v. Cisneros,* 84 F.3d 256, 262 (7th Cir.1996) (construing Title VII to permit suit by one complaining of retaliation either for being suspected of engaging in or for failing to prevent another from engaging in protected conduct); *EEOC v. Ohio Edison Co.,* 7 F.3d 541, 545-46 (6th Cir.1993) (broadly construing statutory language that "he has opposed any practice" to mean the plaintiff or his agent); *Wu v. Thomas,* 863 F.2d 1543, 1547 (11th Cir.1989) (permitting husband's claim of retaliation against him for wife's EEOC filing to "piggy back" on wife's charge of retaliation).

The majority ignores the reality that the threat of

25

retaliatory action against a family member or friend is a substantial deterrent to the free exercise of rights protected under the ADEA. The majority opinion thus permits the very conduct that the anti-retaliation provision is designed to prevent. Because I do not believe that this narrow reading of the provision is justified, I dissent.