**Vida K. CAMERON, Plaintiff,**

v.

**Harris WOFFORD, Chief Executive Officer, Corporation for National Services, Defendant.**

**Civil Action No. 95–4187–DES.**

United States District Court,
D. Kansas.

Feb. 26, 1997.

Cheryl D. Myers, Michael B. Myers, Myers & Myers, Topeka, KS, for Vida K. Cameron.

D. Brad Bailey, Office of U.S. Atty., Topeka, KS, for Corporation for Nat. Services, Harris Wofford, C.E.O.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant's Motion For Summary Judgment (Doc. 16) filed March 29, 1996. For the reasons set forth below, defendant's Motion for Summary Judgment is granted.

## I. BACKGROUND

Congress established the Volunteers In Service To America ("VISTA") program to foster and expand voluntary citizen service in activities designed to fight poverty and empower the disadvantaged. *See* 42 U.S.C. § 4951. From 1971 until 1993, VISTA was administered by ACTION, the Federal Domestic Volunteer Agency of the Office of Economic Opportunity. Presently, the Corporation for National Services ("Corporation") is responsible for administering the VISTA program. *See* 42 U.S.C. § 12651. During their period of enrollment, VISTA volunteers are assigned to work under the direct supervision of federal, state, or local agencies, or non-profit organizations that have requested assignment of VISTA volunteers. *See* 42 U.S.C. § 4953.

In August of 1992, Ms. Cameron applied for a VISTA assignment with Human–Kind, Inc. ("Human–Kind") and became a VISTA volunteer on March 13, 1993. Ms. Cameron served as a VISTA volunteer for Human–Kind for approximately four months. She was removed from the project effective July, 19 1993. By ·letters dated July 19, 1993, August 16, 1993, and August 20, 1993, ACTION advised Ms. Cameron of the opportunity to request reassignment to another project. Although the parties dispute whether Ms. Cameron actually made such a request, Ms. Cameron did not respond by the "no later than" date of August 24, 1993. Consequently, by letter dated August 25, 1993, ACTION advised Ms. Cameron she would be terminated effective September 10, 1993. In the same letter, ACTION also advised ·Ms. Cameron she had ten days to respond to the proposed termination. Ms. Cameron received the notice of proposed termination on August 27, 1993, but did not respond and ACTION terminated her· status as a VISTA volunteer effective September 10, 1993.

Ms. Cameron raised her racial discrimination claim with a Corporation counselor on July 30, 1993. The matter was not resolved through counseling and the Corporation construed her Volunteer Future Plans or Early Termination Request form, received August 30, 1993, as a formal complaint. Subsequently, the Corporation made an offer to settle Ms. Cameron's administrative claim. According to the Corporation, Ms. Cameron was given fifteen days to accept the offer, and this deadline was extended three times before the Corporation considered the offer rejected.

By letter dated March 9, 1994, the Corporation notified Ms. Cameron of its final agency decision to dismiss her complaint and of her right to file a civil action within thirty days in federal district court. On October 13, 1994, Ms. Cameron informed the Corporation by letter that she had not received information of the final agency decision. The Corporation sent another copy of the final agency decision which Ms. Cameron received on November 9, 1994. Ms. Cameron appealed the final agency decision by filing an action with the United States District Court for the District of Kansas on November 21, 1995.

## II. SUMMARY JUDGMENT STANDARD

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. Id. at 323, 106 S.Ct. at 2552–53.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (interpreting Fed.R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. at 2552. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552–53.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. at 2511.

## III. DISCUSSION

 Ms. Cameron filed her employment discrimination claim under Title VII of the Civil Rights Act of 1964 ("Title VII"). In its motion for summary judgment, the government suggests that, according to 42 U.S.C. § 5055(a), VISTA volunteers are not federal employees for Title VII purposes and therefore Ms. Cameron has no right to sue under Title VII. Ms. Cameron's response does not directly address the government's argument. Instead she argues that Title VII applies not only to "employees" but to any "aggrieved person." Ms. Cameron cites *Hackett v. McGuire Bros.*, 445 F.2d 442 (3rd Cir.1971) as her authority. The court does not find *Hackett* persuasive, however.

Ms. Cameron also contends that Human–Kind treated her as a federal employee by requiring her to work fixed hours and that the Corporation initially provided a copy of the procedures to be used by federal employees. The implication of this contention seems to be that treatment as a federal employee somehow changes her status from volunteer to federal employee. The court is not convinced that Ms. Cameron was actually treated as a federal employee except, perhaps, in a most superficial manner. Yet, even if she was treated as a federal employee for certain purposes, the court finds no merit to the argument that such treatment by Human–Kind converts her status from VISTA volunteer to federal employee of the Corporation. Ms. Cameron further contends she was given bad advice by a city and state agency and that proceeding under 45 C.F.R. § 1225.21 was merely one of several options to redress her claim. These arguments are also unhelpful as they do not address the exclusionary effect of 42 U.S.C. § 5055(a).

The court agrees with the government's suggestion that title VII does not apply to Ms. Cameron. Congress has expressly stated that a VISTA volunteer shall not be considered a federal employee. With certain exceptions, 42 U.S.C. § 5055(a) provides that VISTA volunteers "shall not be deemed Fed-

eral employees and shall not be subject to the provisions of laws relating to Federal officers and employees and Federal employment." *Id.* The statute does not make an exception for discrimination laws, including Title VII. *Id.*

 Any rights provided to Ms. Cameron with respect to her discrimination claim appear to arise from the provisions of the VISTA program's enabling legislation, 42 U.S.C. § 4950, *et seq.* However, even if she did bring her claim pursuant to the Domestic Volunteer Service Act ("Volunteer Act"), it was not timely filed.[1] Under 42 U.S.C. § 4950 *et seq.* a complaint must be filed within thirty days of receipt of notice of final action. *See* 45 C.F.R. § 1225.21 (1995). In the present case, the Corporation notified Ms. Cameron on March 9, 1994, of its final agency decision to dismiss her complaint and her right to file a civil action within thirty days. Subsequently, and in response to Ms. Cameron's October 13, 1994, letter informing the Corporation that she had not received information of the final agency decision, the Corporation sent another copy of the final agency decision which Ms. Cameron received on November 9, 1994. Ms. Cameron appealed the final agency decision by filing an action with the United States District Court for the District of Kansas on November 21, 1995, well past the administrative deadlines of both the Volunteer Act and Title VII.

 Ms. Cameron does not dispute the fact she filed her claim past the administrative deadline, but she does contend that equity requires an extension of the time limit imposed by the relevant statute, whether the Volunteer Act or Title VII. The Tenth Circuit has expressly held that compliance with the filing requirements of Title VII is not a jurisdictional prerequisite, but is a condition precedent to suit that functions like a statute of limitations and is subject to equitable tolling. *Gonzalez–Aller Balseyro v. GTE Lenkurt, Inc.,* 702 F.2d 857, 859 (10th Cir.1983) (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 392–93, 102 S.Ct. 1127, 1131–33, 71 L.Ed.2d 234, (1982)). "The burden rests

with the plaintiff to prove this condition precedent when the defendant denies that the condition has been fulfilled." *Stambaugh v. Kansas Dept. of Corrections,* 844 F.Supp. 1431, 1433 (D.Kan.1994) (citing *Jackson v. Seaboard Coast Line R. Co.,* 678 F.2d 992, 1010 (11th Cir.1982)). For purposes of this case, the court will assume the Tenth Circuit would view compliance with the filing requirements of the Volunteer Act in a similar manner. *See Irwin v. Dept. of Veterans Affairs,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).

 A court must determine the propriety of equitable tolling on a case-by-case basis. *Gonzalez–Aller Balseyro,* 702 F.2d at 859. Equitable tolling may be appropriate where "the defendant has actively misled the plaintiff respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his rights...." *Million v. Frank,* 47 F.3d 385, 389 (10th Cir.1995) (quoting *Carlile v. South Routt Sch. Dist. RE 3–J,* 652 F.2d 981, 985 (10th Cir.1981)). Equitable tolling may also be appropriate where a plaintiff has been "lulled into inaction by her past employer, state or federal agencies, or the courts." *Martinez v. Orr,* 738 F.2d 1107, 1110 (10th Cir.1984) (quoting *Carlile,* 652 F.2d at 985).

 Ms. Cameron contends the Corporation "seriously misled" her with regard to the proper procedures for pursuing her discrimination claim by initially providing the wrong forms. It is undisputed that the forms and procedures initially provided Ms. Cameron by the Corporation were applicable to employees of the Corporation, not VISTA volunteers. However, the facts also indicate the Corporation corrected this mistake and informed Ms. Cameron of the proper avenue to pursue her discrimination claim. In particular, the Corporation advised Ms. Cameron of the proper procedures with which to pursue her claim in letters dated August 17, 1993, August 20, 1993, December 7, 1993, and March 9, 1994. It also appears that Ms. Cameron had in her possession a copy of the

---

1. Even under Title VII this action would be untimely. Under Title VII a complaint must be filed within 90 days of receipt of notice of final action. 42 U.S.C. § 2000e–16(c); *Wagher v. Guy's Foods, Inc.,* 765 F.Supp. 667, 668 (D.Kan. 1991).

VISTA handbook, which also provides instructions for proceeding with her discrimination claim.

Ms. Cameron further contends the Equal Opportunity Employment Commission ("EEOC") "seriously misled" her by accepting her complaint against the Corporation. This argument is unpersuasive, however, in light of the letters informing her that she has the right to file an action in United States District Court within thirty days of the final agency decision.

Construing the facts in a light most favorable to the plaintiff, the court rejects Ms. Cameron's equitable tolling argument. The court finds that Ms. Cameron was not actively and purposefully misled or deceived. Nor was she in some extraordinary way prevented from asserting her rights, or lulled into inaction by the defendant, state or federal agencies, or the courts. Accordingly, Ms. Cameron has not met her burden of proving the complaint was timely filed.

In the alternative, Ms. Cameron argues she was denied an opportunity to exhaust her administrative remedies because the Corporation did not reach a decision of the merits of her claim. According to Ms. Cameron, the Corporation violated 29 C.F.R. Part 1614 and the regulations set forth in the VISTA handbook by failing to address the merits of her claim. She also cites *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560 (10th Cir.1994) as authority for her position. The court finds this argument unconvincing.

Although 29 C.F.R. Part 1614 requires a determination on the merits, the procedures outlined in that section do not apply to Ms. Cameron. The applicable procedures are instead found in 45 C.F.R. Part 1225, and do not require a decision on the merits of a claim if the claim is cancelled. *See* 45 C.F.R. § 1225.9(a)(1) (1995). The regulations set forth in the VISTA handbook in no way conflict with this conclusion. To the contrary, the VISTA handbook expressly states "if the Volunteer wishes to file a discrimination complaint related to the termination, he or she should utilize the procedures set forth in 45 C.F.R. Part 1225, which is reprinted in full in Appendix 7." Furthermore, Ms. Cameron's reliance on *Olenhouse* is misplaced.

That case involved an appeal, pursuant to the Administrative Procedure Act, of an agency's final decision based on questions of due process and sufficiency of evidence. *Olenhouse,* 42 F.3d at 1560. In contrast, Ms. Cameron's claim is brought under Title VII; she is not appealing an agency decision pursuant to the Administrative Procedure Act.

As a final argument, Ms. Cameron contends this action is premature because the EEOC failed to investigate her complaint against ACTION. However, as discussed above, 29 C.F.R. Part 1614 does not apply to Ms. Cameron and the applicable procedures, which are outlined in 45 C.F.R. Part 1225, do not provide for the right to appeal ACTION's alleged failure to follow its own termination procedures. The second part of Ms. Cameron's final argument, that the court should apply equitable tolling to the administrative deadline, has been rejected for reasons already discussed.

The court finds as a matter of law that Ms. Cameron has no right to sue under Title VII and that her claim was not timely filed.

**IT IS THEREFORE BY THE COURT ORDERED** that defendant's Motion For Summary Judgment (Doc. 16) is granted.