**Eugene L. McKENZIE, Plaintiff,**

v.

**ATLANTIC RICHFIELD COMPANY, et al., Defendant.**

No. 94–D–2507.

United States District Court, D. Colorado.

Nov. 14, 1995.

Elizabeth Lamb Kearney, Denver, CO, for Plaintiff.

Charles W. Newcom, Sherman & Howard, L.L.C., Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

DANIEL, District Judge.

Plaintiff, Eugene McKenzie, filed a Title VII claim against his current employer, ARCO Coal Company (ARCO), based on his assertion that the company impermissibly retaliated against him for sexual harassment

claims made by his wife when she worked for another division of the parent company. The defendants now move for summary judgment, arguing that plaintiff is unable to establish a prima facie case under Title VII.

## FACTS

In April 1990, McKenzie, a trained accountant, joined Atlantic Richfield, the parent company of ARCO as a grade level four senior auditor. Soon thereafter, he was transferred to ARCO, where from April 1992 until May 1994 he worked in ARCO's U.S. Marketing and Operations ("USMO") Group, a business unit of ARCO. During this time, plaintiff consistently received favorable performance reviews, though his aggressiveness and somewhat dominant personality were noted, and was in fact ranked as an "A" grade employee, thus designating him as a "high potential" individual. Additionally, in April 1991, plaintiff was promoted to grade five pay and likewise promoted to grade six pay in November 1993. In early May 1994, ARCO underwent a major reorganization that resulted in the loss of approximately 24% of its Denver work force. As part of its restructuring, ARCO disbanded the USMO group to which plaintiff was assigned. Plaintiff, however, was retained and incorporated into a restructured planning and evaluation group headed by Denise Ramos, Manager of Planning and Evaluation.

Of significance, plaintiff's spouse, Linda McKenzie, previously worked in a separate division of the parent company wholly distinct and independent from plaintiff's division. Ms. McKenzie joined ARCO in September 1985, and in March 1993, she took a leave from the company. After informing representatives of ARCO in late June 1993 that she had been sexually harassed, Ms. McKenzie filed a sexual discrimination claim against ARCO with the EEOC in November 1993, the same month plaintiff was promoted to grade six pay. In April 1994, Ms. McKenzie and ARCO came to terms on settlement of her discharge. She received her settlement check on May 4, 1994 and withdrew her EEOC complaint on May 7, 1994.

This brings us to May 19, 1994. On that day, Michael DeGenring, Vice President of Finance and Administration for ARCO (and Denise Ramos' supervisor), met with the newly reorganized Planning and Evaluation Group which plaintiff was then a new member. The purpose of the meeting was to describe the new organizational structure of the company. Nine employees were present at this meeting. In short, defendants claim that plaintiff was insubordinate, belligerent, and arrogant during the meeting as evidenced by his comment to DeGenring, his bosses' boss, that he was "talking out of both sides of his mouth." As DeGenring later stated in deposition testimony, "the issue, in general, wasn't so much the questions Mr. McKenzie asked [but rather] the manner in which he asked them." Accordingly, the next day, May 20, 1994, DeGenring and Ramos decided to suspend plaintiff with pay pending an investigation of his conduct. After the investigation, it was determined that plaintiff's behavior at the meeting did not justify termination, though Ms. Ramos did issue plaintiff a written warning which stated that his behavior was "disruptive, hostile, lacking in discretion, and inappropriate." In addition to the paid suspension and written warning, ARCO limited plaintiff's interactions with senior management for four and one-half months while encouraging him to improve his interpersonal skills.

Plaintiff claims that his suspension was in retaliation for his wife having filed a complaint against ARCO rather than any purported inappropriate behavior on his part at the May 19, 1994 meeting. Plaintiff further claims that this retaliation is on-going and has effectively thwarted his "fast track" status with the company. More precisely, he claims that he has been denied promotion opportunities and his upward potential with the company is limited. In this regard, plaintiff points to the fact that prior to May 1994, he was internally classified as an "A" employee whereas in January 1995, his classification changed to "B" status.

Defendants respond that plaintiff cannot establish a prima facie Title VII case, discussed in detail below. To this effect, defendants argue that the persons responsible for plaintiff's disciplinary action—DeGenring and Ramos—were never even aware that plaintiff's wife had filed a complaint against

the company. Thus, defendants contend that it was impossible for them to have a retaliatory motive when those responsible for disciplining plaintiff lacked knowledge of the underlying protected conduct.

## ANALYSIS

As previously stated, plaintiff asserts his impermissible retaliation claim under Title VII, 42 U.S.C. § 2000e–3(a), which provides that

[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

■ This statute has been well litigated and as a result, its parameters are well defined by existing case law. As stated in *Sorensen v. City of Aurora,* 984 F.2d 349 (10th Cir.1993), to support a claim of retaliation,

[a] plaintiff must first establish a prima facie case of retaliation. If a prima facie case is established, then the burden of production shifts to the defendant to produce a legitimate, nondiscriminatory reason for the adverse action. If evidence of a legitimate reason is produced, the plaintiff may still prevail if she demonstrates the articulated reason was a mere pretext for discrimination. The overall burden remains on the plaintiff.

*Id.* at 353. To make a prima facie case, a plaintiff must prove: (1) protected opposition to discrimination or participation in a proceeding arising out of discrimination; (2) adverse action by the employer; and (3) a causal connection between the protected activity and the adverse action. *Williams v. Rice,* 983 F.2d 177, 181 (10th Cir.1993).

■ Though defendants focus on the third element of plaintiff's prima facie case—the causal connection—the first two elements are briefly discussed since this Court must independently satisfy itself that plaintiff can make a prima facie case. As for element one of plaintiff's prima facie case, the protected conduct in this instance is the filing of a sexual discrimination complaint by plaintiff's wife. Though somewhat unique, plaintiff is claiming that the impermissible retaliatory actions by ARCO are derivative in nature. That is, McKenzie claims that he is being retaliated against for his wife's protected conduct. As other courts have held, however, the antireprisal provision of Title VII precludes an employer from discriminating against an individual because that person's spouse has engaged in protected activities. *See, e.g., Wu v. Thomas,* 863 F.2d 1543 (11th Cir.1989); *De Medina v. Reinhardt,* 444 F.Supp. 573 (D.D.C.1978). It is clear that the person who is discriminated against because of the spouse's protected activities may maintain the action. *De Medina,* 444 F.Supp. at 580–81.

■ As for element two of plaintiff's prima facie case—adverse action by ARCO—McKenzie claims that he was improperly suspended and that his future at the company is limited (i.e. no potential for promotion). If true, these actions are indeed "adverse" since "[e]xamples of retaliatory treatment include disciplinary demotion, termination, unjustified evaluations and reports, loss of normal work assignments, and extension of probationary period." *Cooper v. Cobe Labs., Inc.,* 743 F.Supp. 1422, 1433 (D.Colo.1990) (J. Sparr). *See also Sauers v. Salt Lake County,* 1 F.3d 1122 (10th Cir.1993) (holding that transfer or reassignment of duties constitutes impermissible retaliation); *Kenworthy v. Conoco, Inc.,* 979 F.2d 1462 (10th Cir.1992) (holding that denial of promotion constitutes adverse action); and *Rutherford v. American Bank of Commerce,* 565 F.2d 1162 (10th Cir. 1977) (holding that a negative reference by an employer who had previously given a positive reference constitutes impermissible retaliation). In short, the requirement that McKenzie demonstrate adverse action by ARCO is liberally construed to encompass the sort of conduct alleged in this case. *But see Meredith v. Beech Aircraft Corp.,* 18 F.3d 890, 896 (10th Cir.1994) (affirming summary judgment after holding that employer's evaluation that employee "meets expectations" does not constitute adverse action).

■ As for element three of plaintiff's prima facie case—causal connection—ARCO argues that since the individuals responsible for suspending plaintiff, Ramos and DeGenring, have testified that they were unaware that Ms. McKenzie had filed a complaint against the company, plaintiff is incapable of demonstrating that his suspension was retaliatory in nature. As stated in *Williams,* 983 F.2d at 180:

> We have previously assumed, without deciding, that to establish a "causal connection," plaintiff must show that the individual who took adverse action against him knew of the employee's protected activity. *Anderson [v. Phillips Petroleum Co.],* 861 F.2d [631] at 635 [(10th Cir.1988)]. We embrace the assumption of *Anderson* in our holding today.

*Williams* stands for a simple, somewhat self-evident, proposition: if the decision-maker is unaware of plaintiff's protected activity, such activity, by definition, cannot be the motivating factor behind any subsequent adverse employment decisions.

■ In addressing whether plaintiff is able to satisfy element three of his prima facie case, the Court is mindful of the posture it assumes on summary judgment. That is, summary judgment is appropriate if, and only if, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court views the evidence and draws any inferences in the light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to the jury. Furthermore, the Court is particularly mindful that "the question of retaliation is particularly inappropriate for summary judgment disposition, since the primary issue is one of intent and motive." *Romero v. Union Pacific Railroad,* 615 F.2d 1303, 1309 (10th Cir.1980).

■ In this instance, "[t]he ultimate question is whether [plaintiff's] evidence establishe[s] an inference" that ARCO retaliated against him based on his wife's complaint against the company. *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 528 (10th Cir.1994). In considering whether McKenzie can raise such an inference, and thus defeat summary judgment, the Court acknowledges that "[a] causal connection may be proven by circumstantial evidence that justifies an inference of retaliatory motive." *Sahs v. Amarillo Equity Investors, Inc.,* 702 F.Supp. 256, 259 (D.Colo.1988) (J. Babcock). Also, "[t]he causal connection can be demonstrated by direct or circumstantial evidence that creates an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Cooper,* 743 F.Supp. at 1433.

■ Having set the proverbial table, the Court now turns to the proffered evidence in this case. As already stated, the two individuals responsible for disciplining McKenzie were DeGenring and Ramos, and in their depositions they testified that they were unaware of Linda McKenzie's charge against the company. Plaintiff responds that an inference can be drawn that DeGenring and Ramos did in fact have knowledge of Linda McKenzie's complaint. First, plaintiff generally notes that both Ramos and DeGenring routinely interacted and met with other company officials who in fact were aware of Linda McKenzie's charges. Also, both Ramos and DeGenring were aware that Linda McKenzie was on disability leave, and they both in fact occasionally asked plaintiff how his wife was managing. Additionally, plaintiff highlights the fact that at the May 20, 1994 meeting wherein Ramos and DeGenring discussed plaintiff's conduct and discipline, company officials who were aware of Linda McKenzie's charges were present and took part in the discussion, though these same officials deny ever informing Ramos or DeGenring of Linda McKenzie's complaint. Finally, plaintiff notes that an internal August 1993 company memo between ARCO executives in Los Angeles references plaintiff's status with the company after discussing his wife's charges, thus implying that plaintiff's status was somehow tied to his wife's status. Thus, though all company officials have testified that neither Ramos nor DeGenring were aware of Linda McKenzie's charges, the record indicates that they had ample opportunity to learn of her charges.

Though the Court is mindful of defendants' argument that plaintiff's evidence, even if

inferential, must be more than merely speculative,[1] in this instance, though a close call, an inference can be drawn that Ramos and DeGenring had knowledge of Linda McKenzie's complaint. In making this determination, the Court is particularly persuaded by the holding in *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631 (10th Cir.1988), which states:

> Although the evidence in this case is very thin and purely circumstantial, we find that the evidence and reasonable inferences flowing therefrom were sufficient to support Mr. Anderson's claim of retaliation.... The dispute in this case centers upon whether Phillips' failure to transfer Mr. Anderson was casually connected to his participation in protected activity. Phillips argues that there can be no causal connection unless the actual individual who took the adverse action against him knew of the employee's protected activity. Assuming, without deciding, that a plaintiff must show that the individual who took the adverse action against him knew of the employee's protected activity, there was evidence in the record from which the jury could infer that the individual decisionmakers in this case were aware that Mr. Anderson had filed an age discrimination charge. For example, Phillips' witnesses who were responsible for hiring at Borger and Hobbs testified that they were unaware of Mr. Anderson's charge. However, the jury could have inferred that they were aware of the charge if it believed testimony of the supervisor ... that he sometimes communicated adverse job-related information by telephone after he forwarded an employee's name and work history to the hiring locations. The supervisor testified that he was aware of Mr. Anderson's age discrimination charge at the time of the refinery closing.

*Id.* at 635.

Similarly, in this case, though the evidence is also "very thin and purely circumstantial," a reasonable inference can be drawn that Ramos and DeGenring were aware of Linda McKenzie's charges, notwithstanding their deposition testimony to the contrary. Also, in *Anderson*, the court was reviewing a jury verdict whereas here the question is whether this case even proceeds to trial. Given that the issue presented involves a "close call," the Court believes that if it errs, it should err on the side of caution. That is, the Court would rather wrongly submit a close question to the jury than wrongly deny a litigant his or her day in court. However, the Court also cautions that its denial of defendants' motion for summary judgment in no way precludes defendants from rearguing the issue of "causal connection" once plaintiff has presented its case.

■■■■■ Finally, as defendants note, if a plaintiff can establish a prima facie case, the burden of production then shifts to the employer to produce a legitimate, nondiscriminatory reason for the adverse action. *Sauers*, 1 F.3d at 1128. If such evidence is produced, the plaintiff's claims must fail unless the plaintiff demonstrates that the employer's articulated reason—in this case insubordination and employee misbehavior—is merely a pretext for discrimination. *Id.* Applied to the instant case, in order to survive summary judgment, McKenzie must also create a genuine issue of material fact as to pretext.

■■■■ Though defendants argue that any pretext argument advanced by plaintiff again rests on mere conjecture and speculation, plaintiff also satisfies this hurdle. First, insofar as the defendants' argument rests on Ramos' and DeGenrings' lack of knowledge, defendants' argument fails for the reasons stated above. Also, and more specifically, plaintiff offers evidence which indicates that an employee at plaintiff's level has never been disciplined for like conduct. Thus, plaintiff does offer evidence of pretext which a reasonable jury could accept. For these

**1.** *See Panis v. Mission Hills Bank*, 60 F.3d 1486, 1490 (10th Cir.1995) ("The existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.") (quoting *Anderson v. Liberty Lobby,* *Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)). *See also Cone*, 14 F.3d at 530; *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988); and *Setliff v. Memorial Hosp.*, 850 F.2d 1384, 1393 (10th Cir.1988).

reasons, defendants' motion for summary judgment is denied.