### Dart KENDALL, Plaintiff,

### v.

**COBB COUNTY, GEORGIA; Robert Hightower, Individually and in His Official Capacity as Director of Cobb County's Public Safety Commission; David Hayes, Individually and in His Official Capacity as Deputy Fire Chief of Cobb County's Department of Fire and Emer-**gency Services; Jimmy Walker, Individually and in His Official Capacity as Colonel of Extinguishment; and Henry Lewis Young, Individually and in His Official Capacity as Colonel of Training, Defendants.

No. Civ.A. 1:97–CV–0081–RWS.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 2, 1998.

Harlan Stuart Miller, David C. Ates, Kirwan, Park, Chesin & Miller, Atlanta, GA, for Plaintiff.

Deborah L. Dance, Kate Rogers, Office of Cobb County Attorney, Law Department, Atlanta, GA, for Defendants.

## ORDER

STORY, District Judge.

Plaintiff brought this action against Defendants Cobb County, Georgia, Robert Hightower, David Hayes, Jimmy Walker, and Henry Young alleging violations of his rights under the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the First Amendment as enforced by 42 U.S.C. § 1983. This case is before the Court on Defendant's Motion for Summary Judgment [16–1]. After reviewing the entire record and considering arguments of the parties, this court enters the following order.

### I. FACTUAL BACKGROUND

In September of 1994, Cobb County firefighter Ginger Ellerbee informed her supervisor, Sergeant Taft Champion, that she intended to file formal charges of sexual harassment and discrimination with the county due to the actions of Captain Marvin Hill, director of the firefighter training department. Ellerbee discussed the matter with Plaintiff who, at the very least, encouraged her to pursue her complaint through the department's chain of command.[1]

In November of 1994, while Ellerbee was moving through the hierarchy with her complaints, Plaintiff directed Jose del Rosario, a subordinate employee, to falsify attendance records for a state-mandated Emergency Medical Technicians class. Plaintiff instructed del Rosario to include Chief Tom Basnett's name and social security number on the class roster even though Plaintiff was aware that Basnett would not be attending the class. The instructor, Randy Lewis, noticed the false entry and notified Captain Marvin Hill. Hill notified Defendant Henry Young who, together with Defendant Jimmy Walker, conducted a preliminary investigation of the matter. Defendants Walker and Young reported their findings to Defendant David Hayes; Hayes then ordered an internal affairs investigation into the matter. After the investigation, Hayes took the evidence of Plaintiff's actions to Defendant Robert Hightower who recommended that Plaintiff be terminated; Young and Walker made the same recommendation. In consideration of Plaintiff's length of service with the fire department, however, Hayes demoted Plaintiff two ranks from captain to fire engineer instead. A permanent letter of reprimand was placed in del Resarios's permanent file. Importantly, Plaintiff's demotion occurred on January 12, 1995, during the time when Ellerbee was preparing to file her formal complaint with the EEOC. Plaintiff filed his charge of retaliation with the EEOC in July of 1995. During the subsequent investigation, Plaintiff was transferred and placed under the direct supervision of Captain Hill, the officer against whom Ellerbee had filed her EEOC complaint.

Plaintiff alleges that the falsification of training records was a routine practice that Defendant Hightower and other senior officials tolerated and even ordered. Therefore, Plaintiff believes that his demotion was in retaliation for the encouragement and as-

---

1. Plaintiff alleges that his involvement with Ellerbee's complaints was much more extensive; in his deposition testimony, Plaintiff stated that Ellerbee came to him for assistance and that he discussed the matter with her on several occasions. Plaintiff testified that he told her to take her complaints through the chain of command within the department and that, if no one would resolve the situation, that she should file a complaint with the EEOC. Plaintiff also allegedly informed her of the procedure for filing EEOC claims and warned her several times about the statute of limitations. Additionally, when no one in the chain of command responded, Plaintiff alleges that he spoke with Basnett and told him to make sure that the situation was not "swept under the rug."

sistance he gave Ellerbee regarding her discrimination and harassment claims against the county for the actions of Captain Hill. Defendants, on the other hand, argue that the falsification of training records was not ordered or condoned by senior officials and, furthermore, that it was not a routine practice. Instead, Defendants insist that Plaintiff's demotion was caused solely by Plaintiff's involvement in the falsification of training records and did not relate whatsoever to his involvement in the Ellerbee situation.

## II. LEGAL ANALYSIS

A district court shall grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to any material fact and that (2) the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The trial judge should not weigh the evidence to determine the truth of the matter but should only determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The moving party is entitled to summary judgment when, after adequate time for discovery, the nonmoving party completely fails to prove an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Defendants present three grounds for their Motion for Summary Judgment. First, Defendants assert that Plaintiff cannot prove a prima facie case of retaliation under Title VII for his involvement in Ellerbee's dispute and his subsequent demotion. Second, Defendants contend that Plaintiff has presented insufficient evidence to support a prima facie case of retaliation for engaging in constitutionally protected speech. Third, Defendants Hightower, Hayes, Walker, and Young assert that they are shielded from liability under the doctrine of qualified immunity for their actions that relate to this dispute.

A. Title VII Retaliation

■ Under Title VII, it is unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). To prevail, the plaintiff must begin by establishing a prima facie case by showing that: (1) he engaged in a statutorily protected activity; (2) an adverse employment action occurred; and (3) the adverse action was causally related to the protected activities. *Little v. United Technologies, Carrier Transicold Div.,* 103 F.3d 956, 959 (11th Cir.1997). The Eleventh Circuit interprets the causation element broadly so that " 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.' " *Meeks v. Computer Assocs. Intern.,* 15 F.3d 1013, 1021 (11th Cir.1994) (*quoting EEOC v. Reichhold Chem., Inc.,* 988 F.2d 1564, 1571–72 (11th Cir.1993). Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to introduce a legitimate, non-discriminatory reason for the adverse employment action. *Id.* Like Title VII discrimination claims, however, this burden is " 'exceedingly light.' " *Id.* (*quoting Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1495 (11th Cir.1989))). The plaintiff must respond by demonstrating that the employer's reason is mere pretext for retaliation. *Id.*

■ Viewing all evidence in a light most favorable to Plaintiff, it is clear that Plaintiff has presented sufficient evidence to create a genuine issue as to all elements of the prima facie case. The first element may be satisfied if Plaintiff can show that "he opposed an unlawful employment practice which he reasonably believed had occurred." *Bigge v. Albertsons, Inc.,* 894 F.2d 1497, 1501 (11th Cir.1990). First, evidence produced by Plaintiff, at the very least, presents a genuine issue as to whether he reasonably believed that Ellerbee and other female firefighters in Cobb County were victims of unlawful discrimination and harassment. When Ellerbee decided to pursue her claims of harassment and discrimination, she spoke with Plaintiff and ex-

plained to him the basis of her complaints, which include the following items. Ellerbee testified that she was treated differently than male firefighters for ten years because she had no choice; it was "a man's world ... [a]nd ... you either take it or you leave." Male officers, especially Captain Hill, made inappropriate comments that were in poor taste to her; other comments made to her were facially discriminatory. For example, she was told that she did not belong in the fire department because she was a woman. Additionally, Hill and others would engage in discriminatory acts that made it harder for Ellerbee and other female firefighters to compete in training exercises. On several occasions, for example, Hill's training center supposedly changed the calculation of scores on performance evaluations to ensure that female firefighters and their teams would not place as high in the rankings.

Second, there is a genuine issue regarding whether Plaintiff acted on this reasonable belief and engaged in protected activity by opposing the unlawful practice. Plaintiff testified that he met with Ellerbee on several occasions and encouraged her to take her complaint through the fire department hierarchy. He also supposedly met with Basnett to discuss the matter on several occasions. Additionally, Plaintiff testified that he encouraged Ellerbee to take the next step and file an EEOC claim if no one in the chain of command resolved the matter. Plaintiff also informed Ellerbee of the EEOC filing procedures, warned her of the statute of limitations, and assisted her in taking her complaints through the chain of command within the department. Furthermore, Ellerbee was not the only female to benefit from his kindness. As two witnesses testified, he was an advocate for all female firefighters within the department; he made himself available to answer questions and listen to complaints regarding their problems with working in a male-dominated environment. Plaintiff also spoke out on their behalf when he felt they were not being treated equally. For example, Plaintiff expressed his concern when the performance evaluations were altered to the detriment of female teams. This type of support for a co-worker's discrimination and harassment claims qualifies as protected ac-

tivity under § 2000e–3(a). *See Robertson v. Ala. Dep't. of Econ. and Community Affairs,* 902 F.Supp. 1473, 1481 (M.D.Ala.1995), *aff'd,* 89 F.3d 855 (11th Cir.1996) (describing plaintiff's vocal support for co-worker's Title VII lawsuit as protected activity).

Defendants concede that Plaintiff's demotion constitutes an adverse employment action that satisfies the second element of Plaintiff's prima facie case. With regard to the third element, Defendants contend that Plaintiff cannot present a genuine issue on causation because they did not know of Plaintiff's engagement in protected activities at the time of his demotion. Plaintiff has offered several items of evidence that counter Defendant's contentions and could lead a trier of fact to infer that all Defendants knew of Plaintiff's activities. The strongest evidence of a causal connection is the proximity in time between Plaintiff's demotion and the filing of Ellerbee's formal complaint with the EEOC; indeed, Plaintiff's demotion occurred only thirteen days before Ellerbee filed her EEOC complaint and immediately after she exhausted her attempts to resolve the situation within the chain of command at the fire department. *See Bechtel Const. Co. v. Secretary of Labor,* 50 F.3d 926, 935 (11th Cir. 1995) ("Proximity in time is sufficient to raise an inference of causation."). Additionally, as stated above, Plaintiff was known throughout the department as an advocate for female firefighters who would typically become involved in matters similar to the one involving Ellerbee; this fact as well is strong circumstantial evidence that Defendants were aware of Plaintiff's involvement from the outset. Moreover, Plaintiff has presented direct evidence of Defendant Young's knowledge that Plaintiff was involved in the Ellerbee matter; specifically, Basnett testified that in a conversation with Defendant Young, he identified Plaintiff as the person that was "stirring up" the Ellerbee situation and that Plaintiff had advised Ellerbee to take legal action.

Admittedly, Plaintiff has presented no direct evidence that any defendant other than Young knew of his protected activities; however, Plaintiff nevertheless survives summary judgment because a reasonable juror could infer the remaining defendants' knowledge from the circumstantial evidence presented by Plaintiff. Like the court in

*McKenzie v. Atlantic Richfield Company,* 906 F.Supp. 572, 576–77 (D.Colo.1995), this Court would "rather wrongly submit a close question to the jury than wrongly deny a litigant his or her day in court." In *McKenzie,* Plaintiff's evidence of the defendant's knowledge that she engaged in protected activities was very similar to that presented here. Even though the plaintiff had produced nothing more than "very thin and purely circumstantial evidence" to prove this knowledge, the court denied summary judgment because a reasonable juror could have inferred knowledge from this evidence. *See also Anderson v. Phillips Petroleum Company,* 861 F.2d 631 (10th Cir.1988) (stating that "[although the evidence in this case is very thin and purely circumstantial, we find that the evidence and reasonable inferences flowing therefrom were sufficient to support [Plaintiff's] claim of retaliation].").

■ To rebut Plaintiff's prima facie case, Defendants offer a legitimate, nondiscriminatory reason for Plaintiff's demotion—that Plaintiff ordered a subordinate employee to falsify training records by signing an officer's name to an attendance roster for a state-mandated training seminar. In response, Plaintiff argues that falsification of training records was a routine practice of the department that was known to and authorized by Defendants so that Defendants' proffered reason is mere pretext for the true motivation behind his demotion. In support of his position, Plaintiff offers evidence that places the issue squarely in dispute. First, Plaintiff offers his own deposition testimony wherein he states that falsification of training

records was routine and that, on the occasion in question, Plaintiff received an order from Defendant Young, his immediate supervisor, to "do whatever it takes" to ensure that firefighters who had not received their requisite training for the year were registered as attending the class. Because falsification of these records was routine, Plaintiff understood this directive to mean that he should falsify attendance records for the class. Second, Basnett readily agreed with Plaintiff's observations in his declaration, stating that it was an "open and common practice for Cobb County firefighters to falsify their training records" and that "it would be impossible for [Defendants] Hayes, Walker, and Young not to know of this fact." Taken together, Plaintiff's evidence undeniably presents sufficient evidence to put in issue whether the falsification of training records was routine so that Defendant's proffered reason for the demotion is pretextual.[2]

## B. Free Speech Retaliation

■ Plaintiff has produced sufficient evidence to create a genuine issue as to each element of this claim as well. A state employer cannot "retaliate against a state employee for engaging in constitutionally protected speech." *Williams v. Alabama State Univ.,* 102 F.3d 1179, 1182 (11th Cir.1997). The Eleventh Circuit employs a four-part test to determine whether an employer's actions constitute retaliation for protected speech in violation of the First Amendment. Under this test, the Court examines whether: (1) the employee's speech involves a matter of public concern; (2) the employee's interest in speaking outweighs the government's le-

---

**2.** Defendants state that, to prove pretext when Plaintiff has committed a workplace rule violation, Plaintiff must set out evidence that employees similarly situated in terms of their level of responsibility were treated more leniently when they engaged in nearly identical conduct. This is incorrect. Defendants' standard applies when the plaintiff is attempting to prove a prima facie case of discriminatory discharge by presenting evidence that he was disciplined for committing the same violation that employees outside the protected class committed without suffering the same consequences. *See, e.g. Nix v. WLCY Radio,* 738 F.2d 1181, 1187 (11th Cir.1984) (stating that plaintiff makes out prima facie case of discriminatory discharge upon showing that misconduct which caused termination was nearly identical to misconduct by retained employee).

Where, as here, a plaintiff is attempting to prove retaliation and not discrimination, the workplace violation does not even enter the analysis until Defendant offers it as a legitimate nondiscriminatory reason for the adverse employment action. Even at this stage, Plaintiff need not prove that any employees similarly situated were treated differently. Instead, Plaintiff must only respond to Defendants' proffered reasons with evidence that would lead a fact finder to disbelieve them. This disbelief "may, together with the elements of the prima facie case, suffice to show intentional [retaliation]." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407. In this case, Plaintiff has presented evidence sufficient to accomplish both.

gitimate interest in efficient public service; (3) the speech played a substantial part in the government's challenged employment decision; and (4) the government would have made the same employment decision in the absence of the protected conduct. *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1563 (11th Cir.1995). The first two factors are questions of law that, together, determine whether the employee's speech falls under the protection of the First Amendment; the latter two are questions of fact. *Id.*

■ *1. Public Versus Private Concerns.* The conversations Plaintiff engaged in with Ellerbee and other co-workers regarding his concerns about unlawful discrimination within the department and his conversations with Ellerbee regarding her EEOC complaint clearly qualify as matters of public concern. In order to make this determination, this Court considers the "content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 146–48, 103 S.Ct. 1684, 1690–91, 75 L.E.2d 708 (1983). Defendants admit that the content of Plaintiff's conversations with Ellerbee and others within the department concerning sex discrimination touched upon matters of public concern. As Defendants point out, the Eleventh Circuit has stated that "an employee's complaint to a superior reporting the wrongful conduct of a public official, including sexual harassment; would ordinarily be a matter of public concern." *Deremo v. Watkins*, 939 F.2d 908, 912 (11th Cir.1991). *See also Tindal v. Montgomery County Com'n.*, 32 F.3d 1535, 1540 (11th Cir.1994) (concluding that employee's statements supporting discrimination and harassment claims of co-workers was matter of public concern); *Marshall v. Allen*, 984 F.2d 787, 795 (7th Cir.1993) (describing law as "clearly established" that sex discrimination in public agency is topic of public concern).

Even though Plaintiff's speech took the form of mainly private conversations with one or two co-workers, this fact does not prevent it from relating to a matter of public concern. As the Supreme Court decided in *Givhan v. Western Line Consol. School*, 439 U.S. 410, 414, 99 S.Ct. 693, 696, 58 L.Ed.2d 619 (1979), a public employee does not forfeit his "protection against governmental abridg-ment of freedom of speech if he decides to express views privately rather than publicly."

■ Moreover, the context of Plaintiff's speech supports the determination that it concerns a public matter. Defendants argue that Plaintiff's statements against departmental discrimination were made out of pure self-interest so as to remove it from the sphere of public concern. To support this argument, Defendants point to the incident when Ellerbee's team received lower test scores due to a sudden change in the procedure for calculating scores. Because Plaintiff was a member of Ellerbee's team, Defendants assert that his statements regarding the scoring procedure were made out of pure self-interest. First, it is clear that Plaintiff supported Ellerbee on many other occasions when there was no hint of self-interest or gain to be had by Plaintiff as a result. Second, even to the extent that Plaintiff was self-interested in the calculation of the team performance scores, this fact does not take the speech out of the sphere of public concern. *See Peterson v. Atlanta Housing Auth.*, 998 F.2d 904, 916 (11th Cir.1993) ("[M]erely because speech has a personal component does not render it 'not' of public concern.").

*2. The Balancing of Employee and Employer Interests.* Plaintiff had an important interest in speaking out against sex discrimination within his workplace. On the other hand, the employer has introduced no evidence indicating that the employee's speech inhibited either his work or the work of the office; therefore, "[t]he state interest half of the balance ... is empty." 32 F.3d at 1540. Indeed, the employer's interests in efficiency should support Plaintiff's speaking out against discrimination in the workplace; employers should strive to create an environment where employees are encouraged to speak out about this type of behavior.

■ *3. Role of Speech in Employer's Decision.* Evidence introduced by Plaintiff, as discussed more fully in Part A of this Order, would allow a reasonable trier of fact to conclude that Defendants demoted him largely because of, if not entirely due to, his assistance with and support of Ellerbee's complaints regarding sex discrimination within the department.

### 4. Independent Basis for Employer's Decision.

Defendants contend that Plaintiff was demoted solely for his involvement in the falsification of training records. As discussed in Part A of this Order, however, the record indicates a genuine issue concerning whether Defendants used this incident as a pretext for the demotion.

### C. Qualified Immunity

■ Parts A and B of this Order conclude that the record, when viewed in a light most favorable to Plaintiff, supports his claim that the demotion constitutes retaliation in violation of Title VII and the First Amendment. Nonetheless, Defendants Hightower, Hayes, Walker, and Young may be immune from suit in their individual capacities. Government officials are shielded from civil liability when, in the performance of discretionary functions, their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.E.2d 396 (1982). Due to the fact that the line between lawful and unlawful acts is often unclear, "[t]he essence of qualified immunity is that it is unfair-and, as a matter of public policy, unwise-to impose personal liability on government officers unless the officers had advance notice that what they were doing was unlawful." *Lassiter v. Alabama A & M Univ. Bd. of Trustees,* 28 F.3d 1146, 1152 (11th Cir.1994). Therefore, qualified immunity is not surrendered unless pre-existing cases, in factual terms, "truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances." Id.* at 1150. Furthermore, "[w]hen considering whether the law applicable to certain facts is clearly established, the facts of cases relied upon as precedent are important. The facts need not be the same as the facts of the immediate case. But they need to be materially similar." *Id.* Because this analysis hinges on whether applicable federal law clearly prohibits the activity Defendants engaged in, the Title VII and First Amendment claims will be considered independently.

■ *1. Free Speech Retaliation and Qualified Immunity.* Because the applicable law in this area utilizes a balancing test to determine when a public employee's free speech rights have been violated, "the employer is entitled to immunity except in the extraordinary case where [the balancing test] would lead to the inevitable conclusion that the [adverse employment action] was unlawful." *Williams v. Alabama State Univ.,* 102 F.3d 1179, 1183 (11th Cir.1997). Upon reviewing existing case law at the time of Plaintiff's demotion, this Court finds that this is one of those extraordinary cases; indeed, any reasonable government official would have realized that, based on cases with sufficiently analogous facts, Plaintiff could not be demoted for speaking out against discrimination in the workplace and encouraging a co-worker to file a complaint.

First, in 1994 the Eleventh Circuit clearly determined that speech similar to Plaintiff's was protected by the First Amendment so that the defendants were liable for retaliation in *Tindal v. Montgomery County Com'n,* 32 F.3d 1535, 1540 (11th Cir.1994). The plaintiff in *Tindal* brought a free speech retaliation claim against her former employer-the county sheriff's department-claiming that she was terminated due to her testifying on behalf of co-workers in their race and sex discrimination suit. The Eleventh Circuit applied the balancing test and determined that statements made in support of discrimination and harassment claims of co-workers touch upon matters of public concern that outweigh any efficiency concerns of the public employer and, therefore, merit protection under the First Amendment. *Id.*

While it is true that the Plaintiff here did not provide testimony in support of Ellerbee's discrimination and harassment claims like the plaintiff in *Tindal,* there is at least an issue of fact concerning whether Plaintiff was demoted for speaking out in support of a co-worker's discrimination claims against the employer. Therefore, *Tindal* should have served as notice to Defendants that Plaintiff's speech was protected and that, as a result, Plaintiff could not be subject to adverse employment action due to his verbal support of Ellerbee's complaints. Indeed, the overall thrust of *Tindal* is clear and capable of comprehension by any reasonable

government official; if an employee speaks out in support of a co-worker's complaints regarding discrimination and harassment, that speech is protected by the U.S. Constitution. *See also Howze v. Virginia Polytechnic,* 901 F.Supp. 1091, 1100 (W.D.Va.1995) (citing multitude of cases for proposition that as early as 1992 "it could be safely concluded that when an employees speaks out on behalf of other employees who have suffered discrimination, the speech is a matter of public concern").

Additionally, the Seventh Circuit determined that speech almost identical to Plaintiff's was protected by the First Amendment under the balancing test so that officials could not assert a qualified immunity defense in 1993, over one year before Defendants demoted Plaintiff. In *Marshall v. Allen,* 984 F.2d 787 (7th Cir.1993), the plaintiff was discharged after speaking out in support of four female co-workers' complaints of discrimination. Just like the facts at hand, Plaintiff's comments in *Marshall* were made in private conversations and were limited to statements of support for co-workers' discrimination claims. Additionally, the plaintiff in *Marshall* assisted in the preparation of the co-worker's case slightly by providing information about a raise he had received; similarly, Plaintiff here assisted Ellerbee in the filing of her complaint by informing her that she could file a complaint with the EEOC. The Seventh Circuit determined that, at the time the defendants retaliated against the plaintiff in 1988, it was "clearly established" that the plaintiff's speech was protected by the U.S. Constitution and that, as a result, the defendants were not shielded from liability under the doctrine of qualified immunity.

Moreover, even if these and a multitude of other prior decisions by the Eleventh Circuit and its sister courts were not enough to put Defendants on notice that retaliation in these instances is wrong, a reasonable government official could employ the balancing test himself and inevitably conclude that retaliation against employees who speak out in support of co-worker's discrimination and harassment complaints is simply unlawful because that speech is protected by the First Amendment. Sexual harassment and discrimination are, by their very nature, matters of public concern and a public employer could rarely, if ever,

express a legitimate efficiency reason for suppressing speech in support of a co-worker's complaints regarding the same. Indeed, as explained above, any reasonable official would encourage this type of speech so that all forms of discrimination and harassment in the workplace could be disclosed and eradicated immediately. *See Cromer v. Brown,* 88 F.3d 1315, 1330–31 (4th Cir.1996) (stating that "any reasonable official . . . would have realized he would violate the Constitution if he fired [the employee] for speaking of widely held concerns about racial discrimination in the [workplace]" in part because "the balancing test tips decidedly in [the plaintiff's] favor").

 *2. Title VII Retaliation and Qualified Immunity.* As discussed in Part A of this Order, it is unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). The Eleventh Circuit determined that § 2000e–3(a) protects employees that have "opposed an unlawful employment practice which he reasonably believed had occurred." *Bigge v. Albertsons, Inc.,* 894 F.2d 1497, 1501 (11th Cir.1990). *See also Robertson v. Ala. Dep't. of Econ. and Community Affairs,* 902 F.Supp. 1473, 1481 (M.D.Ala.1995), *aff'd,* 89 F.3d 855 (11th Cir.1996) (describing plaintiff's vocal support for co-worker's Title VII lawsuit as protected activity). This is a clearly established rule that any reasonable government official who manages employees should know well and understand. Therefore, to the extent that Defendants violated § 2000e, they are not immune from personal liability.

### III. CONCLUSION

For the aforementioned reasons, Defendants' Motion For Summary Judgment [16–1] is **DENIED.**

**SO ORDERED.**